CICCONI AUTO BODY, Appellee,

v.

NATIONWIDE INSURANCE
COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued May 18, 2006.
Filed July 24, 2006.

Donna M. DiPietro, Philadelphia, for appellant.

John DeVirgilis, Philadelphia, for appellee.

BEFORE: JOYCE, LALLY–GREEN, JJ., and McEWEN, P.J.E.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Nationwide Insurance Company, appeals from the judgment entered on December 7, 2005, in favor of Plaintiff/Appellee, Cicconi Auto Body.[1] We vacate the judgment and remand.

---

1. For convenience, in the remainder of this memorandum we will refer to "Appellant" as Nationwide and "Appellee" as Cicconi.

¶ 2 The factual and procedural history is somewhat complex. On January 2, 2002, an automobile accident occurred between Mr. Christian Yacono and an insured of Nationwide. Yacono was driving a 1993 Subaru Justy. Yacono took his vehicle to Cicconi and left it there, at his own discretion.

¶ 3 On January 9, 2002, Nationwide informed Yacono that he should move his vehicle to a location where storage charges would not accrue. Nationwide's Post–Trial Motions, Exhibit A. Nationwide told Yacono that Nationwide would not be responsible for any storage fees after January 14, 2002. *Id.* Yacono did not move the vehicle.

¶ 4 In a letter dated January 30, 2002, Nationwide accepted liability in the following manner. Nationwide declared the Subaru a total loss. Nationwide paid Yacono the book value of the vehicle ($2,126.36), rather than the cost to repair. *Id.*, Exhibit C. Nationwide retained the salvage value ($101.00) and title fee ($50.00). Nationwide indicated that it would pay these amounts upon three conditions: (1) Nationwide receives the signed title; (2) Nationwide receives a detailed towing and storage bill; and (3) Yacono releases the vehicle to Nationwide's care. *Id.* Nationwide also informed Yacono that he "will be responsible for all storage charges past January 10[sic], 2002 and any excessive fees charged by the repair shop." *Id.*

¶ 5 In a letter dated February 19, 2002, Yacono's attorney rejected this offer and asked Nationwide to settle the entire claim in good faith. *Id.*, Exhibit D. Nationwide responded by letter dated February 22, 2002, stating: "any storage charges which have accrued after January 14th [2002] are the responsibility of Mr. Yacono, not Nationwide Insurance. No payments have been made to date for towing and storage since the repair facility, Cicconi's Auto Body, has refused to provide Nationwide with a copy of the towing and storage bill." *Id.* In this letter, Nationwide also stated that it would pay $132.46 in towing charges and $440.00 in storage fees from January 4, 2002 to January 14, 2002 at a rate of $40.00 per day, for a total of $572.46. *Id.* Finally, Nationwide stated: "if [Yacono] satisfies the remaining storage charges at Cicconi's Auto Body, has the vehicle released free and clear of all charges and provides Nationwide with a properly executed title to the vehicle, we will pick-up the salvage and the pay the remaining $151.00." *Id.* Nationwide did indeed pay $572.46 on or about February 22, 2002. *Id.*

¶ 6 Seven months later, on September 24, 2002, Yacono sent a letter to Nationwide with the title to the vehicle. Yacono stated Nationwide could pick up the vehicle. *Id.*, Exhibit G. However, the title was improperly executed because it was signed by only one of the listed parties, Christian Yacono. It was required to be signed by both Christian and Francine Yacono. *Id.*, Exhibit F.

¶ 7 On December 12, 2002, Nationwide responded that the title was improperly executed. *Id.* Nationwide reiterated that Yacono's "body shop of choice[,] Cicconi's[,] must release the vehicle to Nationwide free and clear of any further charges." *Id.*

¶ 8 Nationwide's claims manager, Keith Wilkins, testified at trial that Nationwide received title on January 24, 2003. N.T., 7/19/2005, at 26–27. The title document itself appears to be lost. On January 24, 2003, Nationwide paid Yacono the salvage value and the title fee, totaling $151.00.

¶ 9 On May 9, 2003, Cicconi faxed an invoice to Nationwide for over $11,000.00 in storage charges incurred from September 24, 2002 through May 8, 2003. *Id.*,

Exhibit G. Nationwide responded by letter, dated May 13, 2003, to Yacono's attorney disclaiming the storage charges. Nationwide again reiterated that it was only responsible for storage charges which had accrued from the date of loss through January 14, 2002, and that those charges, totaling $572.46, had already been paid to Yacono. *Id.*, Exhibit H. Nationwide also stated that it had not received a properly executed title as of May 13, 2003.[2] *Id.* Nationwide also reiterated that it would not pick up the vehicle from Cicconi "until all outstanding charges have been cleared and the vehicle can be released to Nationwide free and clear of all remaining charges." *Id.*

■ ¶ 10 On March 10, 2004, Cicconi filed a civil suit against Nationwide seeking the storage charges from September 24, 2002 to the date of the suit, at a rate of $50.00 per day. *Id.*, Exhibit I.[3] Before trial, both parties presented motions *in limine.*[4] Nationwide moved to preclude evidence that it "is or was the owner of the 1993 Subaru Justy." *Id.*, Exhibit J. Nationwide argued that receipt of title is not equivalent to ownership. *Id.* The trial court denied this motion.

¶ 11 Cicconi presented an oral motion *in limine* to preclude all evidence of the events that took place before January 24, 2003, the date that Nationwide received title. The trial court granted this motion. The court reasoned that Nationwide owned the vehicle as of January 24, 2003. The court also reasoned that anything that happened before that date was irrelevant, because Cicconi had voluntarily dismissed

any claims for charges incurred before that date:

> THE COURT: As I understand it, the plaintiff is not claiming any damages up to that time. So we're not asking the jury to reimburse [Cicconi] for that. So that would be irrelevant. **The triggering issue is, as we discussed off the record, is that Nationwide received proper title, a properly executed title,** and after they received that properly executed title, which they were careful to make sure was properly executed because they took possession a month before, in December, and they sent it back and they said when they got that, we would send the balance that we owe you to the other—Mr. Yacono, who owned the car, originally.
>
> Once Mr. Yacono does send the properly executed title, Nationwide receives it, that triggers Nationwide to send a check to Mr. Yacono, only up to that point in time.
>
> Nationwide sent the balance that was due, which was $151. **At that point, Nationwide owned the car, and responsibility for charges that accrue from that point forward.** I'm ruling that any evidence would be irrelevant up to the time that plaintiff is claiming that Nationwide owned the car.

N.T., 7/19/2005, at 7–8 (emphasis added).

¶ 12 The case proceeded to a jury trial on July 19, 2005. At the conclusion of the evidence, Cicconi moved for a directed verdict. The trial court granted the directed verdict. The court reasoned as follows:

---

**2.** Nationwide now seems to agree that it did receive a properly executed title as of January 24, 2003.

**3.** Cicconi apparently believed that Nationwide received a properly executed title as of September 24, 2002. By the time of trial, Cicconi had adopted the position that Nationwide received proper title on January 24, 2003.

**4.** A motion *in limine* is a "pretrial request that certain inadmissible evidence not be referred to or offered at trial." Black's Law Dictionary, 8th ed.2004.

there was undisputed evidence that the Defendant took title to the vehicle in question on January 24, 2003 and at the same time had notice of, knowledge of the exact location of the vehicle. Defendant made no attempt to obtain the vehicle, to remove the vehicle from the location of Plaintiff's business where the vehicle was being held. Defendant was in sole possession of the title to the vehicle and declared the vehicle a total loss. Through the testimony of their witness Keith Wilkins, Defendant's policy in a total loss case is to retrieve the vehicle. Furthermore, the undisputed testimony is that the storage fee was fifty ($50.00) dollars a day and that the vehicle was in storage from January 24, 2003 to the present day. Therefore, a finding in favor of Plaintiff, Cicconi Auto Body and against Defendant, Nationwide Insurance Company, in the amount of forty-five thousand four hundred fifty ($45,450.00) dollars was entered by this Court.

Trial Court Opinion, 1/10/2006, at 1; *see also* N.T., 7/19/2005, at 66.

¶ 13 Nationwide filed timely post-trial motions on July 27, 2005 for a new trial and *remittitur*. The trial court denied these motions on October 4, 2005. The court entered final judgment on December 7, 2005. This appeal followed.[5]

¶ 14 Nationwide raises four issues on appeal:

1. Did the trial court abuse its discretion in refusing Defendant's Motion for a New Trial since Defendant was precluded from introducing relevant evidence of the events which transpired prior to January 24, 2003?

2. Did the trial court abuse its discretion in refusing Defendant's Motion for a New Trial since the evidence presented at trial was insufficient to support a directed verdict in favor of Plaintiff?

3. Did the trial court abuse its discretion in refusing Defendant's Motion for a New Trial since the Court erred in denying Defendant's Motion in Limine, allowing Plaintiff to argue that Nationwide was the owner of the 1993 Subaru Justy, and finding as a matter of law that Nationwide was the owner of said vehicle?

4. Did the trial court abuse its discretion in refusing Defendant's Motion for Remittitur since the verdict was grossly excessive and unsupported by the evidence presented at trial?

Nationwide's Brief at 4.

. ¶ 15 We will address Nationwide's third issue first, because it bears on the trial court's framing of the case. The record reflects that the trial court made two critical pre-trial rulings which framed the issues for trial. First, the court ruled that Nationwide was responsible for storage charges as of the date that Nationwide owned the vehicle.[6] Second, the court ruled as a matter of law that ownership transferred to Nationwide when it received a properly executed title to the vehicle in January 2003. Nationwide argues it is entitled to a new trial because the trial court erred in denying Nationwide's motion *in limine*. Likewise, Nationwide argues that the court erred by ruling as a

---

5. On November 15, 2005, the trial court ordered Nationwide to file a concise statement of matters complained of on appeal under Pa.R.A.P. 1925. Nationwide filed a concise statement on November 23, 2005, preserving the issues on appeal. The trial court issued a Rule 1925 opinion on January 10, 2006.

6. The trial court did not cite any legal authority for this proposition. We will revisit this question *infra*.

matter of law that Nationwide was the owner of the vehicle as of January 24, 2003, when Nationwide received a properly executed title from Yacono. Specifically, Nationwide argues that it never became the owner of the vehicle. Nationwide's Brief at 21.

¶ 16 Our standard of review is well settled.

This Court will not reverse a trial court's decision regarding the grant or refusal of a new trial absent an abuse of discretion or an error of law. Further, if the basis of the request is the trial court's rulings on evidence, then such rulings must be shown to have been not only erroneous but also harmful to the complaining party. Evidentiary rulings which did not affect the verdict will not provide a basis for [relief].

*Antoniotti v. Eckels*, 840 A.2d 1013, 1015 (Pa.Super.2003), *quoting Yacoub v. Lehigh Valley Med. Assocs. P.C.*, 805 A.2d 579, 586 (Pa.Super.2002) (*en banc*), *appeal denied*, 573 Pa. 692, 825 A.2d 639 (2003).

■ ¶ 17 The Motor Vehicle Code defines the "owner" of a vehicle as "[a] person, other than a lienholder, having the property right **in or title to** a vehicle. The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person, but excludes a lessee under a lease not intended as security." 75 Pa.C.S.A. § 102. (emphasis added). Thus, by the plain language of the Motor Vehicle Code, a titleholder is an owner of a vehicle.

¶ 18 Nationwide cites well-established case law for the proposition that title is a mere **indicator** of ownership, but is not dispositive. Nationwide's Brief at 22, *citing, inter alia, Weigelt v. Factors Credit Corporation*, 174 Pa.Super. 400, 101 A.2d 404 (1953); *see also Holland v. Marcy*, 817 A.2d 1082 (Pa.Super.2002) (*en banc*) (collecting cases discussing "ownership" of a vehicle for purposes of the MVFRL), *affirmed*, 584 Pa. 195, 883 A.2d 449 (2005); *Habbyshaw v. DOT, Bureau of Driver Licensing*, 683 A.2d 1281 (Pa.Cmwlth.1996). This point of law does not benefit Nationwide, however. Those cases generally establish that someone **other than the titleholder** may be **also** deemed an "owner" of the vehicle, by virtue of having sufficient possessory rights to the vehicle. Those cases do not abrogate the fact that the titleholder remains an owner under § 102.

■ ¶ 19 Nationwide also contends that it did not receive proper title under 75 Pa.C.S.A. § 1111. This section reads in relevant part as follows:

**§ 1111. Transfer of ownership of vehicle.**

**(a) Duty of transferor.**—In the event of the sale or transfer of the ownership of a vehicle within this Commonwealth, the owner shall execute an assignment and warranty of title to the transferee in the space provided on the certificate ... and deliver the certificate to the transferee **at the time of the delivery of the vehicle.**

75 Pa.C.S.A. § 1111(a) (emphasis added). Significantly, Nationwide does **not** argue on appeal that it did not receive a properly executed title on or about January 24, 2003.[7] Rather, Nationwide argues that

---

7. In its brief, Nationwide does not specifically state whether or not it received a properly executed title on or about January 24, 2003. Instead, Nationwide seems to studiously avoid conceding that fact. We also note that Nationwide's witness, Keith Wilkins, stated at trial that Nationwide did receive title on or about January 24, 2003. N.T., 7/19/2005, at 46. Nationwide also admits that it released the title fee to Yacono on or about that date. Nationwide's Brief at 7. Nothing in the record suggests that Nationwide paid the fee for any reason other than the fact that it received a properly executed title. Thus, while Nation-

Yacono did not deliver the **vehicle** along with the title. Nationwide's Brief at 22.

■ ¶ 20 Issues not developed by citation to appropriate legal authority are waived. *Jones v. Jones*, 878 A.2d 86, 90 (Pa.Super.2005). Here, Nationwide fails to develop any legal authority that Yacono failed to "deliver" the vehicle under the circumstances. The record reflects that Yacono delivered title when the vehicle was being held by a third party. Moreover, Yacono indicated to Nationwide that so far as he was concerned, Nationwide could pick up the vehicle. Evidence was presented at trial that the vehicle may not have been safely drivable. N.T., 7/19/2005, at 44. Nationwide cites no authority for the proposition that "delivery" of a vehicle requires a transferor such as Yacono to physically tow the vehicle out of a storage facility to a transferee.[8] In short, the trial court did not err as a matter of law when it held that Nationwide was the owner of the vehicle as of January 24, 2003.

■ ¶ 21 We now turn to Nationwide's first issue on appeal. Nationwide argues that the trial court erred by precluding relevant evidence of events which took place before January 24, 2003. Nationwide contends that this evidence was critical to its defense.

¶ 22 "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401. "All relevant evidence is admissible, except as otherwise provided by law." Pa. R.E. 402.

¶ 23 In the instant case, the trial court excluded evidence of any events taking place before January 24, 2003, the date that Nationwide received title. Specifically, the court reasoned that those prior events were irrelevant, because Cicconi was seeking damages only from January 24, 2003 to the date of trial. Central to the trial court's reasoning was its assumption that Nationwide must be liable for the storage fees after it received title from Yacono. As noted above, the trial court cited no legal authority for this proposition.

¶ 24 Moreover, Nationwide intended to present a defense that it was not liable for the storage fees, **notwithstanding the fact that it received title.** For example, Nationwide intended to establish that it

---

wide states that "There is no evidence that title was ever transferred from Christian Yacono," the record appears to reflect a different story.

On the other hand, we question whether Yacono ever delivered free and clear title to Nationwide. Yacono's debt to Cicconi for Yacono's portion of the storage fees may have created a garageman's lien against the title to the vehicle. *See generally Associates Financial Services Co. v. O'Dell*, 491 Pa. 1, 417 A.2d 604 (1980); 75 Pa.C.S.A. § 1106; 1 P.L.E. AUTOMOBILES AND MOTOR VEHICLES § 52. The parties have not developed an argument on this point, and we need not decide it now. We encourage the court and the parties to examine this issue more carefully on remand.

At trial, Nationwide suggested that title did not transfer because Nationwide did not subsequently **register** the vehicle in its name. N.T., 7/19/2005, at 46–47. We disagree. First, it was Nationwide's responsibility to apply for a new title within ten days of receiving the old title. 75 Pa.C.S.A. § 1111(b). Next, Nationwide's failure to act does not preclude Nationwide from being considered an owner. *DOT v. Walker*, 136 Pa.Cmwlth. 704, 584 A.2d 1080 (1990).

8. Nationwide suggests that Yacono did not "deliver" the vehicle because: (1) he did not pay his pre-existing share of the storage fees, and (2) this was a condition precedent to Nationwide being able to move the vehicle from Cicconi's shop. We will discuss this point *infra*.

sent a letter to Yacono disclaiming its responsibility for any storage fees accruing after mid-January of 2002. Under the Motor Vehicle Physical Damage Appraisers Act, 31 Pa.Code § 62.3(b)(8), a motor vehicle damage appraisal must disclose "the date, if any, after which an insurer will not be responsible for any related towing services or storage charges, known at the time of appraisal, and after which the charges will be the responsibility of the consumer." Thus, the Code strongly suggests that it is appropriate for storage charges to become the responsibility of the consumer at some point after a damage appraisal is complete. By precluding any evidence of events before January 24, 2003, the trial court precluded Nationwide from making this argument.

¶ 25 Moreover, even if Nationwide was responsible for storage fees after January 24, 2003, events taking place before that date were relevant to Nationwide's explanation for why it did not retrieve the vehicle after receiving title. It is clear from the record that Nationwide believed it could not retrieve the vehicle from Cicconi until **all** storage fees were paid, including fees owed by Yacono.[9] By precluding any evidence of events taking place before January 24, 2003, the court precluded Nationwide from developing the argument that: (1) Yacono owed the bulk of the fees; (2) Yacono had not paid those fees; and (3) Cicconi would not have allowed Nationwide to retrieve the vehicle even if Nationwide did pay its own portion of the fees. While this defense may or may not have been successful, it is both viable and reasonable. We recognize that Cicconi limited its damages **at trial** to fees after January 24, 2003. We are concerned, however, that the court unreasonably altered and

streamlined the essential history of the case to comport with Cicconi's *post hoc* damage demand.

¶ 26 The court's evidentiary ruling, combined with its categorical assumption that Nationwide is automatically liable for all fees arising after transfer of title, created a radically different picture of the facts of the case. The court's rulings portrayed Nationwide as a party that inexplicably refused to remove the vehicle from the Cicconi lot, when it was absolutely responsible for doing so. In our view, the entire history of the relationship between the parties was relevant to the issue of whether and to what extent Nationwide owed any fees after title was transferred. As such, we are constrained to conclude that the trial court's ruling to exclude that history was both erroneous and prejudicial to Nationwide's defense. As such, we vacate the judgment and remand for a new trial.

¶ 27 Judgment vacated. Remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

---

**9.** Obviously, Nationwide was not prepared to pay what it believed to be Yacono's portion of the fees.