J-S32024-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TROY DAVID AMES | : | |
| | : | |
| Appellant | : | No. 1387 MDA 2021 |

Appeal from the Judgment of Sentence Entered September 14, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005889-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TROY DAVID AMES | : | |
| | : | |
| Appellant | : | No. 1388 MDA 2021 |

Appeal from the Judgment of Sentence Entered September 14, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005878-2019

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED: DECEMBER 19, 2022**

Appellant, Troy David Ames, appeals from the aggregate judgment of sentence of 40½ to 81 years of incarceration, imposed following his convictions for nine counts, all of which involve the domestic abuse of his then-spouse.  We affirm.

The essential facts are straightforward, as the case turned on the credibility of the victim, L.A.  She and Appellant met in November of 2014 and

married in June of 2015. N.T., 4/19-23/21, at 129. The couple and their child, born in 2017, shared a residence. *Id.* On Saturday, October 28, 2018, Appellant came home at approximately 3:00 a.m. *Id.* at 130. Appellant was visibly intoxicated and entered their bedroom, where L.A. was sleeping. *Id.* at 131. He straddled L.A. and put a butcher knife against her neck, telling her that he was going to kill her. L.A. begged Appellant to stop and managed to grab the knife and throw it. *Id.* at 132. Appellant began punching her head and face with a closed fist, telling her that she was going to die. *Id.* at 134.

Appellant eventually took a pillow, held it over her face, and began choking her. *Id.* at 134-35. Appellant ultimately ended the attack on his own and told her to "do what you want to do." *Id.* at 136. Both were bleeding and Appellant told her to take a shower with him. He began crying, "asking why [she] made him do what he did[.]" *Id.* at 138. Afterwards, Appellant told her to perform oral sex. L.A. said she did not want to and that she was in pain and scared. *Id.* at 139. She started but "stopped and said [she] couldn't do it." *Id.* Appellant then forcibly engaged in anal and vaginal intercourse, telling her "to be quiet and enjoy it." *Id.* Afterwards, Appellant fell asleep. While he slept, L.A. took pictures of her injuries and sent them to a friend. *Id.* at 141. The following Monday she sought treatment at a walk-in clinic, where she made an excuse for her injuries.[1]

_____

[1] These acts formed the basis for the charges at docket 2019-5889. Appellant was charged with one count each of the following crimes: sexual assault, 18
*(Footnote Continued Next Page)*

L.A. stayed with Appellant for a few days and then stayed with her parents for three nights. *Id.* at 143. She returned home because Appellant called her to apologize and say that he loved her. *Id.* at 145. When she walked inside, Appellant pushed her against the wall and choked her with both hands. *Id.* at 146. He said "if [she] called the police, he was going to kill [her] and cut [her] body up in pieces and bury [her.]" *Id.*[2]

In December, L.A. left Appellant and, at some point over the next two months, contacted his parole agent. Appellant's parole conditions were modified to include a no contact provision, which Appellant violated by contacting L.A. via phone and Skype. *Id.* at 161. Appellant instructed her "to drop the no contact order or he was going to drive his truck through [her] office building." *Id.*

L.A. testified that this was not the first time Appellant abused her. In September of 2015, Appellant came home drunk and started beating L.A. with his fists. She escaped and ran to a neighbor's yard. Appellant gave chase and pulled her home by the hair, where he continued beating her. He also stabbed her stomach several times with a pencil. She called 911 and Appellant

---

Pa.C.S. § 3124.1; aggravated assault, 18 Pa.C.S. § 2702(a)(4); simple assault, 18 Pa.C.S. § 2701(a)(1); terroristic threats, 18 Pa.C.S. § 2706(a)(1); and strangulation, 18 Pa.C.S. § 2718(a)(1).

[2] Appellant was separately charged at docket 2019-5878 with one count each of the following crimes: strangulation, 18 Pa.C.S. § 2718(a)(1); simple assault, 18 Pa.C.S. § 2702(a)(1); terroristic threats, 18 Pa.C.S. § 2706(a)(1); and intimidation of witness, 18 Pa.C.S. § 4952(a)(1). The cases were consolidated for trial.

was arrested. The Commonwealth inquired if Appellant was abusive on other occasions. L.A. responded that Appellant had been physically abusive multiple times and would often throw plates and punch holes in walls. *Id.* at 170. L.A. described Appellant as controlling, stating that he forced her to quit social media and prevented her from contacting family and friends. *Id.* at 170-71.

Appellant's 2015 conviction was also referenced during the testimony of David Woodring, a parole agent employed by the Pennsylvania Board of Probation and Parole. Agent Woodring supervised Appellant during 2018 and 2019. *Id.* at 346. He explained that on or about February 6, 2019, Appellant's parole conditions were modified to include a no contact provision regarding L.A. This condition was imposed at L.A.'s request and due to her "reports that they were getting a divorce and things were getting kind of ugly and it was in the best interest." *Id.* at 347. L.A. then contacted Agent Woodring on March 27th or 28th of 2019. *Id.* She reported the incidents recounted above, as well as Appellant's violations of the no contact condition. L.A. supplied screenshots from her cellphone showing Appellant attempted to contact her four times on February 16th, once on the 18th, and once on the 25th. Agent Woodring, with L.A.'s consent, contacted the Lower Windsor Police Department and provided them with a written statement by L.A. and the photographs that L.A. had sent to her friend. *Id.* at 348.

Before the Lower Windsor Police Department officially filed charges, Agent Woodring instructed Appellant to report to his office on April 1, 2019, whereupon Appellant was taken into custody for technical violations of his

- 4 -

parole conditions, namely the requirement that a parolee "shall refrain from assaultive behavior" and his violation of the no contact condition. *Id.* Appellant was provided with a notice that a hearing would be held concerning these alleged violations and Agent Woodring explained his accompanying rights. *Id.* at 349. Appellant was also "afforded the opportunity ... to admit to the violations," which would obviate the need for a hearing. *Id.* at 350. Appellant signed the "Notice of Charges and Hearing" document. *Id.* at 357. That document set forth the alleged violations, which included details of L.A.'s account of the assault and Appellant's attempts to contact L.A. The bottom of the form contained an admission by Appellant that he "was in violation of the terms and conditions of my parole. The specific violation(s) that I committed was/were: 5C: Assaultive Behavior; 7: Violation of no contact with [L.A.]." Commonwealth's Exhibit 23 at 1-2 (some capitalization omitted).

The jury convicted Appellant of all counts on April 23, 2021. Following a postponement at Appellant's request, the trial court imposed its aggregate sentence of 40½ to 81 years of incarceration on September 14, 2021. That sentence included a mandatory minimum of 25 to 50 years of incarceration, triggered by Appellant's prior conviction for aggravated indecent assault. 42 Pa.C.S. § 9718.2(a)(1) (requiring mandatory minimum sentence of 25 to 50 years if the person has, at the time of the commission of the current offense, previously been convicted of, *inter alia*, aggravated indecent assault). Appellant timely filed post-sentence motions, which were denied. He then filed a timely notice of appeal, and complied with the trial court's order to file

a Pa.R.A.P. 1925(b) statement of matters complained of on appeal. The trial court thereafter filed a Rule 1925(a) opinion. Appellant raises six issues for our review:

> I. Whether the lower court erred in permitting into evidence Appellant's prior conviction(s) in case number 7438 CA 2015, and the lower court erred in permitting into evidence that Appellant was on parole for the sentence imposed in case number 7438 CA 2015 and/or 3158 CA 2008.
>
> II. Whether trial counsel was ineffective in failing to file a pretrial motion to suppress [A]ppellant's statements to parole Agent David Woodring and Commonwealth's Exhibit "23".
>
> III. Whether trial counsel was ineffective in failing to object at trial statements made by … [A]ppellant to parole agent David Woodring and Commonwealth's Exhibit "23".
>
> IV. Whether the trial court erred in sustaining the Commonwealth's objection to defense counsel attempting to illicit [*sic*] testimony from [P]arole [A]gent Woodring regarding … [A]ppellant's explanation concerning the parole violations/admissions previously testified to by [P]arole [A]gent Woodring and contained in Commonwealth's Exhibit "23".
>
> V. Whether the verdicts in 5889 CA 2019 and 5878 CA 2019 were against the greater weight of the evidence in that the overwhelming evidence established … [A]ppellant could not have committed the offenses.
>
> VI. Whether the trial court abused its discretion in sentencing the appellant to 40½-80 years in that the court erred in imposing a mandatory sentence of 25-50 years and in running [the] sentences consecutive[ly].

Appellant's Brief at 4 (unnecessary capitalization omitted).

Appellant's first issue challenges the Honorable Maria Musti Cook's ruling[3] granting the Commonwealth's motion to admit Appellant's 2015 conviction, as well as Appellant's admission to Agent Woodring.[4] We find that these claims are waived.

On August 27, 2020, the Commonwealth filed a motion to introduce Appellant's prior abuse of L.A., which included both the prior conviction and general assaultive behaviors that were unreported. The latter encompassed "throwing plates of food at her, hitting her, pulling her hair, yelling at her, threatening to kill her[,] and acts of controlling behavior." Commonwealth's Motion *In Limine*, 8/27/20, at 3. The Commonwealth asserted that these acts were admissible pursuant to Rule of Evidence 404(b). Broadly speaking, that Rule precluded the Commonwealth from establishing that Appellant assaulted L.A. based on the fact he previously assaulted her, as that would invite the jury to convict Appellant based on his propensity to commit violence against L.A. **See** Pa.R.E. 404(b)(1). However, Rule 404(b)(2) permits the introduction of that type of evidence "for another purpose[.]" Pa.R.E. 404(b)(2). The Commonwealth's motion in this case relied on three separate other purposes: common scheme, motive, and *res gestae*.

_____

[3] Judge Cook decided the pre-trial motions, and the Honorable Craig T. Trebilcock presided over the trial.

[4] As indicated by Appellant's statement of questions, Appellant was on parole from his conviction for the 2015 incident "and/or 3158 CA 2008." Appellant's Brief at 4. That conviction was for burglary. The jury was not told for which crime Appellant was on parole.

- 7 -

Beginning with common scheme, caselaw requires a comparison of the other crimes and the charged crimes. If there is a "logical connection" between the crimes, then the evidence may be admissible on a non-propensity basis. *See Commonwealth v. Arrington*, 86 A.3d 831, 842 (Pa. 2014). According to the Commonwealth, "[Appellant]'s plea of no contest to charges of terroristic threats and simple assault are admissible to prove a common scheme by [Appellant] to preserve his intimate relationship 'through harassment, intimidation, and physical violence.'" Motion *In Limine*, 8/27/20, at 5. The prior acts met the comparative criteria because they were identical in terms of location (the marital home) and victim (L.A.). For purposes of this theory of admissibility the Commonwealth did not specifically address the host of uncharged assaultive behavior.

The second theory was motive. The Commonwealth asserted that evidence of prior abuse is generally admissible "to establish motive, intent, malice, or ill-will." *Id.* at 6 (quoting *Commonwealth v. Ivy*, 146 A.3d 241, 252 (Pa. Super. 2016)). The Commonwealth noted that L.A. testified at the preliminary hearing that when she begged him to stop the attack, "he said he had to kill me because back in 2015, I called the cops on him before and he knew I'd do it again." N.T. Preliminary Hearing, 9/12/19, at 10. Thus, the Commonwealth posited that Appellant attacked her, in part, as revenge for reporting the abuse to the police.

Third, the Commonwealth cited the "*res gestae*" theory of relevance, which at its broadest level of application allows the introduction of evidence

to "complete the story of the crime on trial by proving its immediate context of happenings near in time and place." Commonwealth's Motion *In Limine*, 8/27/20, at 8 (quoting ***Ivy***, ***supra*** at 252-53). According to the Commonwealth, both the prior conviction and the general history of assaultive behavior were necessary to form a complete picture in this case. The Commonwealth asserted that the probative value of the evidence outweighed its prejudicial effect.

The trial court ultimately granted the motion in all respects, agreeing with the Commonwealth that the prior conviction was admissible "as evidence to show a common scheme to preserve [Appellant]'s intimate relationship with the victim through harassment, intimidation, and physical violence." Order, 12/14/20, at 2. Appellant now challenges that ruling on appeal. However, we find that Appellant waived any objection regarding the prior convictions.[5] While the trial court and Commonwealth both address the merits of his argument, the certified record establishes that Appellant waived this issue. At the pre-trial hearing on the Commonwealth's motion, Appellant largely focused on the uncharged behavior and conceded the admission of the prior conviction.

> ATTORNEY REINER: Your Honor, the Commonwealth cited 404(b) rules in his motion. Clearly, all of these are extremely prejudicial for my client if they are allowed to be introduced at trial. With respect to – specifically, again, I think the Commonwealth passed up a list of allegations by the victim. It is a laundry list of

---

[5] Appellant does not challenge the admission of the uncharged assaultive behavior.

complaints and allegations and I would object to all of those coming in. They are all – they were reported to the police on April 25, 2020. They weren't charged offenses. I would ask for those all to be excluded from testimony at trial.

One, for primarily being irrelevant, and the prejudicial nature of all of those statements. **I would ask that the victim's testimony would be limited to the prior conviction. I can't dispute that. The case law supports that. The prior conviction comes in as common scheme.**

N.T. Motion *In Limine*, 9/10/20, at 19-20 (emphasis added).

This concession waives Appellant's challenge to the admission of the prior conviction he now raises on appeal. We acknowledge that the filing of a motion *in limine* entails a recognition that the evidence is presumably inadmissible. *See Cicconi Auto Body v. Nationwide Ins. Co.*, 904 A.2d 933, 935 n.4 (Pa. Super. 2006) ("A motion *in limine* is a 'pretrial request that certain inadmissible evidence not be referred to or offered at trial.'") (quoting *Black's Law Dictionary*, 8th ed. 2004). Nevertheless, issue preservation requirements still apply. For example, in *Commonwealth v. Cousar*, 928 A.2d 1025 (Pa. 2007), the Commonwealth introduced evidence that the defendant had a tattoo with the letters "M.O.B." to link the defendant to another participant in a robbery, who also had a tattoo with the same letters. The defendant argued that this evidence was subject to Rule 404(b), "imply[ing] that [the defendant] had criminal propensities and was connected to illegal gang activity." *Id.* at 1040. However, at trial, the defendant alleged only that the evidence was irrelevant. Our Supreme Court observed:

Even assuming his presentation to this Court can be interpreted to raise the contention that the trial court's ruling violated Rule 404(b)(3), *see* Pa.R.E. 404(b)(3) (stating that other-crimes

- 10 -

evidence may only be admitted upon a showing that its probative value outweighs its potential for prejudice),[6] [the a]ppellant failed to preserve this issue for appeal, as the objection lodged in the trial court dealt solely with the question of relevance. *See* N.T. May 4, 2001, at 17. "The rule is well settled that a party complaining, on appeal, of the admission of evidence in the [c]ourt below will be confined to the specific objection there made." *Commonwealth v. Boden*, … 159 A.2d 894, 900 ([Pa.] 1960). *See generally Commonwealth v. Rovinski*, 704 A.2d 1068, 1075 (Pa. Super. 1997). Thus, any claim based on Rule 404(b)(3) is waived.

*Id.* at 1041 (footnote added).

If a generalized relevancy objection is insufficient to preserve a separate Rule 404(b) issue for appellate review, then a concession that the evidence is admissible also cannot preserve the issue. *See also Commonwealth v. Lehman*, 275 A.3d 513, 529 (Pa. Super. 2022) ("Although [the a]ppellant objected to the at-issue impeachment at trial, he never cited Rule 404(b) at that time, nor did he reference the rule's ban on prior bad acts evidence during the sidebar discussion.").

We also find that waiver is an appropriate sanction because permitting a party to concede admissibility of evidence only to later complain on appeal creates a tactical advantage.[7] There is some evidence demonstrating that

---

[6] Rule 404(b) has since been amended, and the referenced language now appears within Rule 404(b)(2).

[7] The Commonwealth's position on the merits heavily relies on precedents like *Arrington*, *supra*, which permitted the introduction of evidence of prior abuse against separate women to show a "common scheme." Various Justices

*(Footnote Continued Next Page)*

Appellant's counsel intended to use the prior conviction and incarceration as a reason to discredit L.A., theorizing that L.A. was motivated to have Appellant returned to prison for violating his parole due to their relationship ending. Immediately prior to jury selection, the Commonwealth raised an issue about Appellant's incarceration, stating: "I believe the defense … actually wanted that information to come out, that she was having contact with him while he was incarcerated." N.T., 4/19-23/21, at 13. Appellant's counsel responded, "I was planning on bringing up the fact that he was in prison[.]" ***Id.*** Appellant's counsel followed up by referencing Appellant's sentencing for the 2015 conviction: "[I]t was said on the record that [L.A.] wished to have contact with him, even though he was in prison, and they proceeded to have contact the entire time. So that's part of our defense is that she continued to

---

of the Supreme Court of Pennsylvania have expressed reservations about cases like ***Arrington***. ***See Commonwealth v. Hicks***, 156 A.3d 1114, 1152–53 (Donohue, J., dissenting) (criticizing ***Arrington*** as involving "unconnected acts, constituting, at most, a pattern of abusive behavior toward women" that was clearly not part of the defendant's purpose in committing the crime charged); ***id.*** at 1157 (Wecht, J., dissenting) (agreeing with Justice Donohue and adding that "[i]t is natural and well-nigh inevitable … that a juror will conclude that, if a person has assaulted women before, he likely will do so again"); ***id.*** at 1130 (Saylor, C.J., concurring) (distinguishing between use of other acts evidence to prove identity versus other theories of relevance; agreeing with Justice Donohue that "various majority opinions ... have incorrectly blended various distinct grounds for relevance"). ***Hicks*** did not produce a majority opinion, but in light of these strong criticisms, we decline to address whether the evidence was properly admitted on this basis.

have contact with him." *Id.* Appellant's counsel also stated, "[L.A.] went into parole and knew that he was going to be locked up." *Id.* at 14.

Appellant's opening statement also informed the jury that the case "is about a failed marriage, it's about custody, it's about timing and it's about revenge." *Id.* at 120. Counsel told the jury that they would hear about Appellant's prior conviction and incarceration, "and you are going to hear that he did counseling, he did anger management, he did everything that was asked of him during that time." *Id.* at 121. Counsel also claimed that, during that period of time, L.A. "stayed in contact" with Appellant and "they were planning their future together." *Id.* However, "their marriage began to fall apart. … [Appellant] was moving on with his life without [L.A.]." *Id.* Appellant's attorney emphasized that L.A. failed to report the incident for months afterward, and argued that L.A. was angry that the two had separated. Counsel claimed: "She began to make threats to contact his parole officer, which she ultimately followed through on. She texted him, I can't wait to see you back in jail, which was her plan all along." *Id.* at 125. Appellant's counsel further pointed out that L.A. did not contact the police directly; instead, "she reported it to the one person that she knew who could put him in jail immediately." *Id.* at 126.

Had that theory convinced the jury, then Appellant would have benefitted from the concession that his prior conviction was admissible. Obviously, if Appellant had voluntarily introduced his prior conviction and

parole status as a tactical choice, there would be no question that he could not complain that the jury heard the evidence. We see no difference between that scenario and what occurred here. Simply put, we cannot find that the court abused its discretion when our adversarial system of justice contemplates that the judge will be called upon to choose between competing positions. It is, of course, possible that counsel was merely making the best of a bad situation, in light of the ruling. But counsel's concession created confusion where an objection would have eliminated it.

Turning to the admissibility of Appellant's admission to Agent Woodring, we conclude that Appellant failed to preserve the argument put forth in his brief. Appellant's brief focuses on the prejudicial nature of his status as a parolee, thus arguing that the jury was unduly inflamed by hearing that Appellant was on parole. **See** Appellant's Brief at 15-16. However, at the pre-trial hearing, Appellant merely objected to the statements on the basis that the statements themselves were prejudicial. **See** N.T. Motion *In Limine*, 9/10/20, at 21 ("Again, my basis for objecting to that coming into trial is the prejudicial nature of that document and that admission."). Appellant's current argument is essentially a variation of the argument that the prior conviction should not have been admitted. Certainly, absent the admissibility of the 2015 conviction, informing the jury that Appellant was on parole for a crime would raise serious questions concerning the admissibility of that evidence.

Because Appellant objected only on the basis that the statements themselves were prejudicial, as opposed to his status as a parolee, the claim is waived.

Appellant's second and third issues both challenge trial counsel's stewardship with respect to the admissibility of Appellant's statement to Agent Woodring. We find that these issues must be deferred to collateral review.

The substance of both claims is the same. Appellant contends that trial counsel ineffectively failed to file a pre-trial motion to suppress Appellant's statements to Agent Woodring. Relatedly, Appellant separately alleges that trial counsel ineffectively failed to object to Agent Woodring's testimony. As a general rule, ineffective assistance of counsel claims should be deferred to the collateral review stage. *See Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002). In *Commonwealth v. Holmes,* 79 A.3d 562 (Pa. 2013), the Supreme Court of Pennsylvania recognized two exceptions to this general rule. First, trial courts retain discretion to consider claims of ineffective assistance "where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice[.]" *Id.* at 563. The second exception applies where there is "good cause shown" and the review "is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA." *Id.* at 564.

The latter exception does not apply. Even assuming Appellant established "good cause" to review this issue at this juncture, he did not waive his right to seek collateral review. "A court should agree to such review only upon good cause shown and after a full PCRA waiver colloquy." *Id.* at 580. Thus, the claim(s) would have to satisfy the first exception and be sufficiently "meritorious" to the extent that immediate review is required to "best serve[] the interests of justice[.]" *Id.* at 599. They are not. We agree that the statements were potentially suppressible as the product of a custodial interrogation because parolees must be given *Miranda*[8] warnings when subjected to custodial interrogation. *Minnesota v. Murphy*, 465 U.S. 420 (1984); *Commonwealth v. Cooley*, 118 A.3d 370, 376 (Pa. 2015) (concluding that parolee was in custody during parole meeting). Appellant does not develop an argument establishing that he was both in custody and interrogated such that the statements were clearly inadmissible. Instead, he merely claims that a motion "would likely have been successful." Appellant's Brief at 20.

Additionally, Appellant does not seriously address whether the prejudice component has been met. To prevail on an ineffective assistance of counsel claim, the claimant must establish, in addition to other requirements, a "reasonable probability that the outcome of the proceedings would have been

_____

[8] *Miranda v. Arizona*, 384 U.S. 436 (1966).

different." ***Commonwealth v. Ali***, 10 A.3d 282, 291 (Pa. 2010). Appellant's argument on that point is undeveloped. "Had the statement not been admiss[i]ble, Appellant argues the outcome of the trial would have been different. This is especially highlighted in that the jury verdict was against the greater weight of the evidence." Appellant's Brief at 20. These conclusory statements, which rely in part on a presumption that this Court will agree that he was entitled to a new trial based on the weight of the evidence, do not rise to the level of a sufficiently "meritorious" claim, such that the usual rule of deferring ineffective assistance claims to collateral review does not apply.

Finally, Appellant's waiver of the first issue poses obstacles to performing a prejudice analysis. Whether Appellant can establish a reasonable probability that the outcome would have been different requires an analysis of whether the 2015 conviction was properly admitted.[9] For the

---

[9] We appreciate that the trial court attempted to address the ineffective assistance of counsel claims in the alternative. However, insofar as these claims will almost assuredly be pursued during subsequent proceedings, we caution that nothing in the trial court's analysis should be read to resolve the issues on their merits. For example, the court concluded that filing a motion to suppress the statements was not a viable strategy because "Judge Cook had already ruled upon these matters as a result of the Commonwealth's motion *in limine*." Trial Court Opinion, 12/29/21, at 13.

The fact that Judge Cook granted a motion to **admit** the statements as an inculpatory admission is analytically distinct from whether a basis to **exclude** the statements exists. A successful challenge on ***Miranda*** grounds would prohibit the introduction of those statements regardless of whether some other evidentiary rule would otherwise permit the Commonwealth to introduce the statements. The Rules of Evidence cannot, of course, conflict with the
*(Footnote Continued Next Page)*

foregoing reasons, we find that these two claims must be pursued during collateral proceedings.

Appellant's fourth issue involves the trial court's sustaining the Commonwealth's objection during a portion of Appellant's cross-examination of Agent Woodring. Appellant's counsel asked, "[Appellant] told you that the messages were him trying to talk to his daughter, is that true?" N.T., 4/19-23/21, at 362. The Commonwealth objected on the grounds of hearsay. Appellant's response argued that the conversation between Appellant and Agent Woodring was relevant, with the trial court's responding that "[t]heir objection is not relevance, their objection is hearsay." *Id.* Appellant did not make any further response.

We review evidentiary decisions for an abuse of discretion. ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1090 (Pa. 2017). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." ***Commonwealth v. Walker***, 92 A.3d 766, 772–73 (Pa. 2014) (internal quotation marks and citations omitted).

_____

United States Constitution. ***Cf. Crawford v. Washington***, 541 U.S. 36, 61 (2004) ("Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.'").

Appellant now contends that the trial court abused its discretion by failing to afford him the latitude to elicit necessary context pursuant to Pennsylvania Rule of Evidence 106, colloquially known as the "rule of completeness." That Rule states: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time." Pa.R.E. 106. The purpose of the Rule is to "give the adverse party an opportunity to correct a misleading impression" if another portion of that statement is introduced. *Comment*, Pa.R.E. 106.

Here, we find no abuse of discretion by the trial court, as Appellant has not established that his reasons for contacting L.A. would combat any misimpression created by the Commonwealth. The Commonwealth merely established that Appellant attempted to contact L.A. It did not suggest that Appellant contacted L.A. for any specific reason. We thus agree with the trial court that Appellant was attempting to introduce his own hearsay.[10]

---

[10] The trial court observed, "There does appear to be a preference, within our case law, against allowing defendants to assert the privilege of not testifying while nonetheless attempting to inject their own, favorable, hearsay statements into the proceedings." Trial Court Opinion, 12/29/21 at 18. We agree, but we note that the "rule of completeness" can permit the introduction of evidence that would otherwise be hearsay on the basis that supplying context is a non-hearsay purpose.

*(Footnote Continued Next Page)*

- 19 -

Appellant's fifth issue challenges the weight of the evidence. He points to several pieces of evidence that undermine L.A.'s testimony to the extent that the trial court erred in declining to grant a new trial on weight grounds. Appellant points out that the physician who treated L.A. two days after the initial incident, Dr. Kathleen Struminger, stated that L.A. complained of a toe injury and a laceration on her finger. N.T., 4/19-23/21, at 399. She said that the laceration did not appear to be serious, and she treated the toe fracture with tape. *Id.* Dr. Struminger also noted a bruise on the left side of L.A.'s face. Additionally, Dr. Struminger is a mandated reporter and required to report any suspected abuse to authorities. *Id.* at 402. She did not believe that there was anything to report based on "what [L.A.] told me." *Id.*

Appellant also offered the testimony of Dr. Kathleen Brown, a professor at the University of Pennsylvania's nursing school who specializes in the field of sexual assault. *Id.* at 433. Dr. Brown was qualified as an expert in the fields of forensic nursing, physical injury, and treating sexual assault. *Id.* at

---

It is sometimes stated that the additional material may be introduced only if it is otherwise admissible. However, as a categorical rule, that statement is unsound. In particular, the statement is sometimes inaccurate as applied to hearsay law. At least when the other passage of the writing or statement is so closely connected to the part the proponent contemplates introducing that it furnishes essential context for that part, the passage becomes admissible on a nonhearsay theory.

The effect of the introduction of part of a writing or conversation, 1 McCormick On Evid. § 56 (8th ed.) (footnotes omitted).

438. Dr. Brown reviewed the incident reports and the photographs depicting L.A.'s injuries, and opined that "the history she gave and the injury that I see are not consistent with one another. I would expect to see much more injury than she has." *Id.* at 449. Additionally, she would expect to see more cuts and lacerations if a knife were held to the throat. *Id.* Appellant submits that these observations contradict L.A.'s testimony that Appellant repeatedly punched her in the face and that she grabbed a knife with her hand. When combined with other circumstances, including the fact that L.A. gave various explanations for the source of her injuries, Appellant argues that he is entitled to a new trial.

The judge's task in ruling on a weight of the evidence claim is well-settled.

> Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

*Commonwealth v. Widmer,* 744 A.2d 745, 752 (Pa. 2000) (citation omitted). The trial court cogently explained its reasons for rejecting Appellant's claim:

> There was evidence in which a jury might have found some support for the notion that the victim was lying. The defense cites to various evidence that is potentially at odds with the victim's claims. These include the testimony of a defense expert in forensic nursing and sexual[-]assault examinations, Doctor Kathleen Brown, who expected to see more significant

injuries, based upon the victim's claims, than what were present. The treating physician, Doctor Kathleen Struminger, a mandatory reporter, did not see any injuries prompting her to make a report— though, it should be noted, this physician stated that there was nothing to report "with what [the victim] told me." And the victim had stayed with [Appellant] and expressed feelings of love and sexual desire for him.

Unacknowledged, for obvious reasons, by the defense is that victims of physical and sexual abuse have reasons for reporting in the manner in which they choose — reasons that can often appear incomprehensible to an outsider who is not the one suffering abuse at the hands of a supposed loved one. And, in fact, as the victim testified about some of these inconsistencies, which we recounted in the facts section above, she loved [Appellant] at one time, she wanted her marriage to work, and they shared a daughter for whose safety the victim worried. Hence, Dr. Struminger, the mandatory reporter, testifying that there was nothing to report with what the victim had told her. The doctor's own views were distorted by the victim's claims as to how the injuries were incurred and the victim supplied a pretty standard reason as to why she acted in a manner that some might construe as inconsistent with her later allegations.

Arguably, there are pieces of evidence which undermine the Commonwealth's case; however, the test is not whether there is any evidence that goes against the Commonwealth's assertions. Rather, this [c]ourt is to examine whether the verdict was "so contrary to the evidence as to shock one's sense of justice." In light of the evidence favoring conviction, recounted throughout this opinion, we were not shocked by the verdict and, therefore, we were barred from overturning that verdict. Upon receiving the verdict, we did not lose our breath or threaten to slip from the bench. In spite of some inconsistencies, present in all cases, but especially in the he-said-she-said sort involving domestic strife, Lady Justice is still

- 22 -

> firmly rooted atop her pedestal. As to either case, no relief was due on this claim.

Trial Court Opinion, 12/29/21, at 19-21 (citations omitted).

Mindful that we are reviewing the exercise of discretion and not whether the verdict is against the weight of the evidence, **Widmer**, **supra** at 753, we find no abuse of discretion. The trial court's opinion addresses the points raised by Appellant and explains why, as the presiding judge who heard and saw the witnesses firsthand, a new trial is not warranted. We do not find that the court "abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." **Commonwealth v. Clay**, 64 A.3d 1049, 1056 (Pa. 2013). No relief is due.

Appellant's final claim concerns his aggregate sentence. He presents challenges to both the legality and discretionary aspects of his sentence. We readily dispose of the former claim, which is that the mandatory minimum sentence required by 42 Pa.C.S. § 9718.2(a)(1) is unconstitutional. Appellant's precise challenge is not entirely clear, as he claims that the statute unconstitutionally permits a judge to impose the sentence without having the jury find the facts of the prior conviction, while conceding that caselaw has rejected this argument. **See generally Commonwealth v. Golson**, 189 A.3d 994, 1002 (Pa. Super. 2018) (explaining that the fact of a prior conviction is the remaining exception to line of United States Supreme Court cases holding that facts leading to increased punishment must be determined

beyond a reasonable doubt by the fact-finder). Appellant then claims the mandatory sentence "manifestly results in cruel and unusual punishment." Appellant's Brief at 33. The reasons why his sentence is "cruel and unusual" are not explained.

Briefly, we note that in **Commonwealth v. Baker**, 78 A.3d 1044 (Pa. 2013), the Supreme Court of Pennsylvania rejected a claim that the Section 9718.2 mandatory punishment was "grossly disproportionate" based on the gravity of the triggering conviction (in that case, possessing and viewing child pornography). The proportionality concept recognizes that "punishment for crime should be graduated and proportioned to offense." **Weems v. United States**, 217 U.S. 349, 367 (1910). Appellant offers no substantive argument that the mandatory period of incarceration is "grossly disproportionate" based on his triggering offense. **See also Commonwealth v. Colon-Plaza**, 136 A.3d 521, 529 (Pa. Super. 2016) (applying **Baker** and rejecting the appellant's attempt to compare the mandatory minimum sentence against the guideline ranges for a first-time offender). Thus, his legality-of-sentencing argument fails.

Turning to the discretionary aspects of Appellant's sentence, those appeals are not permitted as of right. A four-part test must be met to invoke our jurisdiction to review the discretionary aspects of sentencing.

> [W]e conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether [the] appellant's brief has a

fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super.2010) (citations omitted).

Appellant filed a timely appeal, preserved his sentencing issue in a post-trial motion, and included a Rule 2119(f) statement in his brief. Regarding the substantial question component, the Commonwealth argues that Appellant has failed to present a substantial question because his complaint is simply that the judge imposed consecutive sentences. "Generally speaking, the court's exercise of discretion in imposing consecutive as opposed to concurrent sentences is not viewed as raising a substantial question that would allow the granting of allowance of appeal." ***Commonwealth v. Gonzalez-Dejusus***, 994 A.2d 595, 598 (Pa. Super. 2010) (citations omitted). In ***Commonwealth v. Dodge***, 77 A.3d 1263, 1270 (Pa. Super. 2013), we acknowledged "the critical distinction between a bald excessiveness claim based on imposition of consecutive sentences and an argument that articulates reasons why consecutive sentences in a particular case are unreasonable or clearly unreasonable." Appellant appears to argue that the imposition of consecutive sentences is unreasonable because, in part, the mandatory sentence of 25 to 50 years' incarceration was sufficient on its own. We accept that this is an articulable reason beyond the mere fact that the

sentences were imposed consecutively, thus constituting a substantial question for our review.

Having invoked our jurisdiction, Appellant fails to show that the trial court abused its discretion. Appellant's argument on the merits is little more than an attack on the trial court's decision to impose the sentences consecutively. For instance, he claims: "[T]he sentences in the individual cases should have run concurrent[ly]. If so, but still running the sentences consecutive[ly] for the two cases, the aggregate sentence would have been 30–60 years as opposed to 40½ to 80 years." Appellant's Brief at 33. Of course, every instance of consecutive instead of concurrent sentences will result in a longer sentence. Appellant makes no attempt to show that the trial court abused its discretion in any way.

We have reviewed the sentencing transcript, wherein the trial court stated that it considered the pre-sentence report, Appellant's background, age, substance abuse issues, and the effect on the victim. N.T. Sentencing, 9/14/21, at 17-18. The court recognized that Appellant's prior record score was a five and, in considering Appellant's rehabilitative needs and potential, recounted the convictions that led to that score, which included convictions for aggravated indecent assault, terroristic threats, and several counts of simple assault. The court determined that these convictions establish "a common theme here in [Appellant]'s background of victimizing others. He seeks to impose his rule on others through violence, intimidation, and

threats." ***Id.*** at 20. The court opined that little has changed in Appellant's behavior from his earlier convictions in 1996 to the present case. The court determined that these crimes were more of the same, as Appellant "was found guilty of victimizing this same woman, not once, but multiple times." ***Id.*** at 20-21. The court found "no rehabilitative potential. He's reached his middle age with a chronic pattern of extreme[,] violent behavior." ***Id.***

Sentencing judges enjoy a great degree of latitude in fashioning an appropriate sentence because of their superior position to weigh these sorts of issues. "Simply stated, the sentencing court sentences flesh-and-blood defendants…. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed." ***Commonwealth v. Walls***, 926 A.2d 957, 961 (Pa. 2007). The trial court thoroughly explained why some consecutive sentences were warranted in light of Appellant's history and the offenses, and we find no abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/2022